UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOLLY C. TAYLOR,

    Plaintiff,

v.

JACOB Q. TOONE, HAWX SERVICES, LLC,
and SHAD HOLDINGS, LLC,

    Defendants.

Case No. 19-cv-936-JPG

## MEMORANDUM AND ORDER

    This case stems from an automobile accident between plaintiff Molly C. Taylor and defendant Jacob Q. Toone, who had a contractual relationship of some sort with defendant Hawx Services, LLC ("Hawx"). Taylor seeks to hold Hawx liable for Toone's conduct as his employer. She also seeks to bring a new claim holding defendant Shad Holdings, LLC ("Shad") liable under an alter ego theory for Hawx's obligations as Toone's employer.

    This matter comes before the Court on Hawx's motion for summary judgment (Doc. 95) on Taylor's claim that it is liable under a *respondeat superior* theory for Toone's conduct. Hawx claims it was not Toone's employer so it cannot be vicariously liable for Toone's conduct. Taylor has responded to Hawx's motion (Docs. 99-100), and Hawx has replied to that response (Doc. 104).

    The Court also considers Taylor's motion for leave to file a third amended complaint to add a claim against Shad (Doc. 101). The Court previously granted summary judgment for Shad on the grounds that it could not be liable under a *respondeat superior* theory for Toone's conduct because it did not come into existence until well after the time of that conduct. The Court suggested, however, that Taylor may be able to pierce the corporate veil between Hawx and

Shad, an LLC solely owned by Hawx, under an alter ego theory to hold Shad liable for Hawx's obligations. This is the claim Taylor seeks to add in a third amended complaint. Shad has responded to that motion (Doc. 105). Shad urges the Court not to allow Taylor to amend her pleading because there is no basis for holding it liable to Taylor.

The Court first addresses Hawx's summary judgment motion concerning whether Toone was an employee or an independent contractor. Then, if necessary, the Court will address whether Taylor should be allowed to add a claim against Shad to pierce the corporate veil.

**I.      Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed.

R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**II.     Facts**

Taylor and Toone were in an automobile accident on July 13, 2019, that severely injured Taylor and totaled her car. The parties disagree about the nature of the relationship between Toone and Hawx. It is clear that Toone was temporarily working as a salesperson for Hawx, a pest control service, including at the time of the accident, but the parties disagree whether he was an employee or an independent contractor.

     A.    <u>Hawx's View of the Relationship</u>

Hawx describes the relationship primarily by reference to the 2019 Hawx Independent

Direct Seller Agreement ("Agreement") it had with Toone.  *See* Def.'s Mot. Summ. J., Ex. A (Doc. 95-1).  The Agreement expressly stated Toone was "not an employee, agent, joint venture or partner of Hawx for any purpose whatsoever and has no right or authority to assume or create any obligation, liability or expense, express or implied, on behalf or in the name of Hawx." Agreement § I.A, Def.'s Mot. Summ. J., Ex. A (Doc. 95-1 at 2).  Because it viewed Toone as an independent contractor rather than an employee, Hawx did not apply the terms of its Employee Handbook, Pl.'s Resp. Mot. Dism., Ex. 2 (Doc. 69), to Toone.  The Agreement also provided, among other things, that:

- Hawx would not pay payroll taxes or make withholdings for Toone but would issue Toone a Form 1099, and Toone would be responsible for paying his own employment-related taxes, Agreement § I.A;

- Toone had discretion to decide the number of days and hours he worked, *id.* at § II.B;

- Toone was responsible for all of his own expenses, including expenses for his vehicle, fuel, cell phone, food, computer, and clothing, *id.* at § II.D,

- Toone could decide the manner in which he performed his work, *id.* at § II.F & § IV;

- the Agreement was terminable by either party on certain conditions, *id.* at § VIII.A & B; and

- Hawx would make housing available that Toone could choose to rent from Hawx and pay for by withholdings from his commission payments, *id.* at § VI.A.

Hawx further points to Toone's testimony that Hawx's sales manager did not "control" Toone in his work; that Toone never received a training manual; that Hawx had a suggested sales pitch format which Toone was free to modify to suit his personality; that Toone had the discretion to set the price of the services within a range established by Hawx and to schedule the services to be performed by Hawx pest control technicians; that Toone was paid solely by commission with no minimum number of sales required; and that Toone selected the communities in which he tried to sell Hawx's services.  Hawx notes that it did not provide Toone

any funds to finance the purchase of the car he used on the job, although a Hawx coworker lent him money for that purpose.

Hawx also points to additional information in the testimony of its president, Matthew Mehr, that Hawx's automobile insurance policy covered vehicles driven by its technician employees, but not by its salespeople like Toone. Salespeople were not even required to have a vehicle, but if they did, they provided their own vehicles insured by their own insurance policies. Hawx provided each salesperson with company polo shirts and hats so they would look reputable on sales calls.

B.  Taylor's View of the Relationship

Taylor also points to the Agreement and Toone's deposition but argues they reveal much more control by Hawx over Toone and his work. For example, Taylor acknowledges that Hawx gave Toone the option of renting housing from Hawx with payment to be made by deductions from Toone's paycheck. She also points out, though, that after Toone signed the agreement to rent—the "Single Housing Promissory Note," Agreement Ex B, Def.'s Mot. Summ. J., Ex. A (Doc. 95-1 at 11)—he was obligated to pay the rent regardless of whether he actually worked for Hawx or occupied the apartment. Hawx required Toone to service at least 5 accounts a week to cover the cost of the housing, and if he did not, it could terminate him from his job. The note also prohibited the possession or use of legal (alcohol, tobacco, cigarettes) and illegal (illegal drugs) substances in and around the apartment, and prohibited overnight guests for any reason. *Id.* According to Toone's testimony, the apartments owned by Hawx and rented to Hawx's salespeople also served as the place for the daily sales force meeting and training before the salespeople ventured out for the day. And because Toone performed well during the time he worked for Hawx, Hawx refunded him the rent he paid at the end of the year. So in essence,

5

Hawx paid Toone's rent because he was a successful salesperson, and Hawx had a degree of control over Toone's activities while he lived in that housing.

Additionally, it appears Toone did not have much leeway in selecting where and when to "knock on doors" to try to sell Hawx's services. Toone testified that there was a daily 9:00 a.m. meeting at the apartment complex in which he and other salespeople lived, then the salespeople would begin going on sales calls around 10:00 a.m. They would work all day until dark, taking a break for lunch. Toone testified that he worked on Saturdays but got Saturday evening off, and he could quit earlier in the day if he maintained good sales numbers. He testified that on the morning of the accident, Toone attended the 9:00 a.m. meeting in which a manager directed him to go to Illinois but allowed him to select the community he would visit from a list of communities where Hawx's technicians would be that day. Thus, Taylor argues Toone had limited discretion about where and when to make sales calls on that day.

In addition, although Toone had some discretion about the prices to charge, Hawx set a minimum price. Toone was also obliged under the Agreement to become involved in a customer's improper payment procedures. *Id.* at § II.C. And Toone testified that Hawx would dock his pay if not enough customers signed up for automatic payment plans.

Hawx also controlled what Toone was allowed to wear when "knocking on doors." It required him to wear a polo shirt it provided with Hawx's name on it and to comply with the company dress code, which specified non-denim shorts or pants, a belt, and a pair of walking shoes. Hawx retained the discretion to unilaterally change the dress code. *Id.* at § V.

As for the car Toone was driving at the time of the accident, he testified that it did indeed belong to him. He had purchased it a little less than two weeks earlier with money his manager loaned him for the down payment. Toone bought the car when he went home to Utah for a

6

family reunion over the July 4th holiday at a dealership suggested by a Hawx coworker, who used to work for the dealership. The manager sent Toone the money electronically while Toone was at the dealership, and Toone paid the manager back at the end of the summer.

Taylor points out that Toone was also obligated to comply with "Hawx's rules, regulations, handbooks, manuals, training, policies, practices and procedures," which were subject to amendment at Hawx's discretion. *Id.* at § IV. Hawx's Employee Handbook provides the kind of detailed rules and information that are hallmarks of an employer-employee relationship. *See* Table of Contents, Employee Handbook, Pl.'s Resp. Mot. Dism., Ex. 2 (Doc. 69 at 2-3). Much of the content of the Employee Handbook is inconsistent with how the Agreement describes Toone's work (*e.g.*, work hours, timekeeping and payroll, statutory and fringe benefits). *See id.*

Hawx now asks the Court for summary judgment on Count II, the claim against it, on the grounds that no reasonable jury could find that Toone was Hawx's employee or agent. Thus, the question before the Court now is whether, viewing the foregoing evidence and drawing all reasonable inferences in Taylor's favor, a reasonable jury could find Toone was an employee or agent of Hawx at the time of the accident.

**III.   Analysis**

    A.   Hawx's Vicarious Liability

The Court summarized the relevant law in an earlier order finding Toone was not an employee or agent of Shad:

> It is undisputed that a third party can hold a principal or employer vicariously liable under the doctrine of *respondeat superior* for the wrongful acts of its agents or employees. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012);

7

> *Moy v. Cty. of Cook*, 640 N.E.2d 926, 927-28 (Ill. 1994).[1]  Whether *respondeat superior* can apply depends on the existence of an agency relationship—that usually means whether the alleged principal had the right to control the worker's work—and whether the agent's conduct was within the scope of the agency. *Bogenberger v. Pi Kappa Alpha Corp.*, 104 N.E.3d 1110, 1119 (Ill. 2018).

Mem. & Order 3 (Doc. 96).  The Court concluded there that there could not have been an agency or employment relationship between Toone and Shad because Shad did not exist at the time of the accident.

The instant motion presents a more complicated question because it is clear Toone was doing work for Hawx, so the question becomes whether he was doing that work as an employee or as an independent contractor.  This is a frequently litigated question because employers are generally liable for their employees' torts within the scope of their employment but not for the torts of their independent contractors unless they are functioning as agents.  *See Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012).  Under Illinois law, an independent contractor is:

> one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified . . . [and] without his being subject to the orders of the [person for whom the work is done] in respect to the details of the work.

*Id.* (internal quotations omitted; brackets in original).

Whether a worker is an employee or an independent contractor depends on the specific facts and circumstances of each case.  Those factors include, but are not limited to, "the manner of hiring, the right to discharge, the manner and direction of the work of the parties, the right to terminate the relationship, and the character of the supervision of the work done." *Taylor v. Kohli*, 642 N.E.2d 467, 468 (Ill. 1994).  Other factors include "the method of payment, the work

---

[1] The parties assume Illinois law applies to the agency issues in this case, so the Court proceeds under that assumption.

schedule . . ., who provides the tools, materials or equipment, the skill required in the work to be done, whether the worker's occupation is related to that of the employer, and who deducts or pays for insurance, social security and taxes." *Warren v. Williams*, 730 N.E.2d 512, 518 (Ill. App. Ct. 2000) (citing *Ragler Motor Sales v. Indus. Comm'n,* 442 N.E.2d 903, 905 (Ill. 1982)). No single factor is determinative, but the most important consideration is "the right to control the manner that the work is done." *Taylor*, 642 N.E.2d at 468-69. In making the determination, the Court looks beyond label the parties attach to the relationship to the realities of the relationship. *Warren*, 730 N.E.2d at 518.

In the case at bar, the factors do not uniformly fall on one side or the other but clearly weigh in favor of finding an independent contractor relationship. As a preliminary matter, although labels are not dispositive, both parties agreed in the Agreement that Toone was not an employee and could not create any obligations as an agent for Hawx. The method of hiring Toone was by a written contract governing the terms of the relationship, including the ways it could be terminated by either party. This is a hallmark of an independent contractor relationship, although it is possible in an employment relationship as well.

As for the right to control the manner of Toone's work, the most important factor, the Agreement expressly gave him tremendous discretion over where, when, and how he worked, a strong indication of an independent contractor relationship. The way the relationship actually played out does not differ significantly from the relationship described in the Agreement. Taylor points to certain business activities as proof of Hawx's control over Toone's work despite the discretion he was granted in the Agreement—for example, the daily morning training meetings, the standard working hours, instruction for Toone to work in Illinois on the day of the accident—but no evidence suggests Hawx could *require* these things of the salespeople rather than just

9

offering them choices the salespeople voluntarily made in order to be successful.  For example, no evidence suggests that Toone did not have the discretion to skip a morning meeting or a workday, to depart from the "10 a.m. to dark" work hours, or to refuse to cover a geographic area where his manager directed him.  Indeed, Toone's testimony was that "we would do" this or that, not that Hawx "required us to do" this or that.  Taylor seems to merge Hawx's advice and expectations, which Toone voluntarily met, with an employer's right to dictate the manner of work.  Nothing in the Agreement or the way it was actually performed suggests Hawx had the right to control those aspects of Toone's daily work.

It is true that the Agreement curtailed Toone's discretion in his job performance to some degree.  For example, Toone agreed to abide by Hawx's dress code, which it could unilaterally amend.  But those minimal restrictions—essentially wearing the company shirt and a belt and not wearing denim—were a very small part of Toone's overall job performance.  Similarly, Toone agreed to behave honestly and ethically, but that is generally an expectation for both employment and independent contractor relationships.  Hawx also had the right to tinker with Toone's earned pay, but again that right was laid out in the Agreement and was not any inherent power of an employer to control an employee.

It is also true that the Agreement bound Toone to abide by other unspecified policies and rules Hawx set.  However, the only specific policy Taylor points to as an example of employer-like control is the Employee Handbook, which contradicts the Agreement in multiple material ways.  It is simply unreasonable to read Toone's general promise to abide by Hawx's policies as an agreement to toss aside the remainder of the Agreement itself in favor of a traditional employment relationship.

As for the housing arrangement between Hawx and Toone, which gave Hawx authority

10

over Toone as his landlord, there is no evidence that Toone did not voluntarily enter into that optional relationship or that Hawx exercised its authority as a landlord to control Toone's work, as opposed to aspects of his life outside of work.  Access to housing was an optional benefit Toone voluntarily chose and paid for during the summer, with only the possibility of reimbursement at the end of the year.

Other factors clearly weigh in favor of an independent contractor relationship.  The method and basis of payment (commissions with an end-of-the-year lump sum payment) and Toone's own provision of a car (and its requirements like insurance and fuel) to do the job are typical of an independent contractor relationship.  Toone's occupation as a salesperson was different from Hawx's business of pest control, which also weighs in favor of an independent contractor relationship.  And Hawx did not treat Toone as an employee for payroll purposes, declining to deduct insurance, social security, and taxes from his pay.

In sum, although the evidence is not uniformly supportive of an independent contractor relationship, it so strongly favors finding an independent contractor relationship that no reasonable jury could find Toone was an employee of Hawx at the time of the accident.  Thus, Hawx cannot be vicariously liable for Toone's conduct related to the accident and is entitled to summary judgment.

      B.      <u>Shad as Hawx's Alter Ego</u>

In light of the foregoing disposition of the claim against Hawx, the Court declines to allow Taylor to file an amended complaint to add a claim to pierce the corporate veil between Hawx and Shad under an alter ego theory.

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings.  A plaintiff may amend its pleading once as a matter of course within 21 days of serving it or within 21 days after

service of a response or a motion to dismiss, for a more definite statement or to strike.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a plaintiff may amend his pleading only with the opposing parties' written consent, which Taylor has not obtained, or leave of court, which the Court should freely give when justice requires.  Fed. R. Civ. P. 15(a)(2).  Although the text of the rule has changed in recent years, the rule still "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities."  *McCarthy v. Painewebber, Inc.*, 127 F.R.D. 130, 132 (N.D. Ill. 1989).  Generally, the decision whether to grant a party leave to amend the pleadings is a matter left to the discretion of the district court.  *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 480 (7th Cir. 1997).

A court should allow amendment of a pleading except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.  *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)).  An amendment is futile if it would not survive a motion to dismiss for failure to state a claim, *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997), or a motion for summary judgment, *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860 (7th Cir. 2001).

The Court declines to allow amendment because the claim Taylor seeks to add is derivative of Hawx's liability, and, as explained above, Hawx has no liability for Toone's actions.  The Court has already determined that Shad has no independent liability to Taylor, and the holding in this order makes it clear that it can have no derivative liability either.  It would be futile to allow amendment.

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Hawx's motion for summary judgment (Doc. 95);

- **DENIES** Taylor's motion for leave to amend her complaint (Doc. 101); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

Taylor's claim against Toone is the only remaining claim in this case.

**IT IS SO ORDERED.**
**DATED:  May 26, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
